UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA CIRCUIT

JOHN DOE, M.D.,                              :
                                             :
        Plaintiff,                     :    Case No.:
                                             :
v.                                           :
                                             :
PROVIDENT LIFE & ACCIDENT                    :
INSURANCE COMPANY                            :
1 Fountain Square                            :
Chattanooga, T.N. 37401                      :
                                             :
Serve:    Deborah Jewett                     :
          Provident Life & Accident          :
          Insurance Company                  :
          2211 Congress Street               :
          Portland, M.E. 04122               :
                                             :
        Defendant.                     :

**COMPLAINT FOR COMPENSATORY, DECLARATORY AND INJUNCTIVE RELIEF**

Comes now Plaintiff John Doe, M.D., through his attorneys HANNON LAW GROUP, LLP, and for his Complaint against Defendant states as follows:

**Jurisdiction**

1.    This Court has jurisdiction pursuant to the diversity provisions of 28 U.S.C. § 1332. The Court also has authority pursuant to 28 U.S.C. § 2201, in a case of actual controversy within its jurisdiction, to declare the rights of Plaintiff and Defendant.

2.    Plaintiff is a resident of Washington, D.C.

3.    Defendant Provident Life and Accident Insurance Company ("Provident") is a corporation incorporated under the laws of the state of Delaware, having its principal place of business in Chattanooga, Tennessee, and doing business in Washington, D.C. The matter in controversy exceeds, exclusive of interests and costs, the sum specified by 28 U.S.C. § 1332.

1

4. Dr. John Doe is insured by Defendant Provident under a Disability Income Insurance Policy ("Disability Policy"). Defendant Provident is the administrator of the Policy.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1332.

**Factual Background**

6. Dr. John Does earned his doctor of medicine degree from a prestigious state Medical School in 1975. He then completed his residency training in emergency medicine, his chosen filed of practice, at a local University Hospital in 1978. Dr. John Doe served as an emergency room physician at a regional military center from 1978 to 1984. From 1984 to 1997, Dr. John Doe worked as a full time emergency room physician with an association of physicians that provided medical services to emergency rooms in Washington, D.C., and the metropolitan area. From 1998 to April 2004, Dr. John Doe worked as a part time employee for that physician group.

7. The Disability Policy issued by Provident to Dr. John Doe went into effect on October 1, 1985, when Dr. John Doe was working full-time as an emergency room physician. The premiums have been paid on a timely basis from the date of the issuance of the policy to the present.

8. Provisions of the Policy provide that Total Disability Benefits ("Total Benefits") are payable to individuals, who suffer from Injuries or Sickness, provided that:

> The [policy holder is] unable to perform the substantial and material duties of [his] occupation; and the [policy holder is] under the care and attendance of a Physician.
>
> Your occupation means the occupation (or occupations, if more than one) in which you are regularly engaged at the time you become disabled.

9. Provisions of the Policy also provide that Residual Disability Benefits ("Residual Benefits") are payable to individuals, who suffer from Injuries or Sickness provided that:

> [The policy holder] is not able to do one or more of [his] substantial and material daily business duties or [the policy holder] is not able to do [his] usual daily business duties for as much time as it would normally take [the policy holder] to do them.

10. Over nine years ago, in December of 1997, Dr. John Doe was forced to reduce the amount of time he spent working in the emergency room due to his increasing anxiety and depression. As a consequence of repeated episodes of exposure to exceedingly stressful, "life and death" cases, Dr. John Doe developed, and continues to suffer from, recurrent nightmares, flashbacks, sleep disturbance, and avoidance of all reminders of emergency medical practice.

11. Dr. John Doe's treating clinical psychologist determined that he suffers from chronic Post Traumatic Stress Disorder ("PTSD"). Dr. John Doe's continued denial of his condition due to his work ethic resulted in an exacerbation of his PTSD and led to a more recalcitrant depression. As a consequence of this increasingly debilitating psychiatric illness, Dr. John Doe was forced to continue reduction of the amount of time spent in emergency medicine. In 1998, after faithfully practicing full time emergency medicine for twenty years, Dr. John Doe attempted to mitigate the stressful effects of his work by dramatically reducing the number of hours worked. This change was cause for an enormous reduction in income. In 2000, Dr. Doe, hoping to alleviate economic loss, turned to the part time practice of internal medicine in a limited capacity in which he would see non-emergent, non-critical patients on a scheduled basis.

12. In April of 2004, Dr. John Doe was forced to stop practicing emergency medicine completely due to his psychiatric illness. Currently, Dr. John Doe is working as a general internist in a private practice on a contract basis in Washington, D.C. The practice of internal medicine is much less lucrative than his chosen occupation as an emergency room physician.

13. On December 17, 2005, Dr. John Doe filed a claim for benefits under the Disability Policy with Provident, including a Physician's Statement as required by the Policy. In

support of his claim, Dr. John Doe furnished Provident clear and sufficient medical proof that he was and is disabled from the practice of emergency medicine beginning in December of 1997. Under the terms of the Disability Policy, he was therefore entitled to benefits.

14.     On January 5, 2006, Defendant Provident acknowledged receipt of Dr. John Doe's request for benefits, including the above referenced Physician's Statement, but denied his claim for benefits under the Policy, despite the fact that Dr. John Doe furnished documentation of his PTSD.

15.     On February 14, 2006, Provident informed Dr. John Doe that it considered August 29, 2005, the start date of his disability. According to Provident, this represented the first date Dr. John Doe received treatment and was unable to work due to his psychiatric condition. Nevertheless, Provident did not agree to pay the benefits to which Dr. John Doe was and is entitled under the Disability Policy. Instead, Provident stated:

> If we receive copies of medical records that document treatment and support for limitations and restriction from an earlier date, we will re-evaluate this disability date. As such, benefits under this policy began to accrue on November 27, 2005, [due to a 90-day Elimination Period, during which time no benefits are payable and one must remain disabled before benefits begin to accrue].

Provident denied benefits, even though the Physician Statement provided by Dr. John Doe clearly and unequivocally stated that his disability began in December of 1997. There was no contrary evidence in the Provident record.

16.     Nevertheless, as per Provident's request, Dr. John Doe submitted summaries from his treating health care providers during the time in question, affirming that he suffered and suffers from chronic PTSD related to repeat emotional traumas from his long term practice as a trauma physician, that his depressive tendencies predispose him to PTSD, and that the PTSD has exacerbated his depression.

17. Despite its earlier letter, on March 22, 2006, Provident concluded that "restrictions or limitations due to a psychiatric disorder were not supported in April 2004, and are not supported at this time." This position again disregards and discounts the Physician Statement and the statements of Dr. John Doe's treating health care providers.

18. On May 16, 2006, Provident further informed Dr. John Doe that:

> [T]he information currently contained in your file does not appear to support your claim [of an inability to work in emergency medicine since April 2004.] Records reflect you reduced your emergency medicine work part time in 1998 and continued working part time until 2004. You also began working part time in internal medicine in 2000, continuing to the present. It appears you gradually reduced emergency room work and at the same time increased your work in the internal medicine field, until you gave up emergency medicine in favor of internal medicine.

19. On June 15, 2006, Provident asserted that Dr. John Doe's condition did not limit or interfere with his ability to perform his job. Therefore, it again denied him benefits under the Disability Policy:

> [I]t does not appear that restrictions or limitations due to psychiatric disorder were supported in April 2004 and do not appear supported at this time.
>
> Also, it is our opinion that, in April 2004, the date you claimed you were last able to work as an emergency room physician, your occupation was that of an internal medicine physician – your current occupation – and not that of an emergency room physician.
>
> If we do not receive your written appeal within 180 days of the date of this letter, our claims decision will be final.

20. The Disability Policy issued by Provident to Dr. Doe does not include any provision for an appeal process. This letter was a pretext by which Provident hoped to discourage Dr. Doe from asserting his rights under the Disability Policy, as were Provident's repeated requests for additional information and medical records.

## Count I – Breach Of Contract

21. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 20.

22. The Disability Policy is a contract between Defendant Provident and Dr. John Doe. Provident received thousands of dollars in premiums in exchange for its promise to fully and faithfully execute its duty under the Disability Policy to pay benefits when due. Dr. John Doe complied with all requirements of the Disability Policy to demonstrate that he was and is unable to perform substantial and material duties required of his occupation as an emergency room physician and was and is under the care of a physician.

23. The Policy provides that Benefits are payable to individuals, who suffer from injuries or sickness, provided that the policy holder is unable to perform the substantial and material duties of <u>their occupation</u>, and that the policy holder is under the care and attendance of a Physician. The Policy further defines "Your Occupation" as one in which the policy holder is regularly engaged at the time the policy holder becomes disabled.

24. On December 17, 2005, Dr. John Doe claimed Benefits under the Policy. In support of his claim, Dr. John Doe furnished Provident clear and sufficient medical proof that he is disabled and therefore entitled to Benefits.

25. Provident wrongfully denied Dr. John Doe benefits, stating that his illness did not interfere with his work as an emergency room physician. Provident further wrongfully asserted that when Dr. John Doe's disability arose, he was in the occupation of an internal medicine physician. Under that pretext, Provident asserted that Dr. John Doe had not suffered any diminishment of income in his occupation.

26. By failing to acknowledge that Dr. John Doe suffered and continues to suffer from chronic PTSD and depression despite having clear and sufficient medical proof thereof, and by failing to recognize that his medical condition precluded him and continues to preclude him from working as an emergency room physician, Provident has breached the Disability Policy contract of insurance, causing damage to Dr. John Doe.

27. Dr. John Doe is entitled to Residual Benefits, pursuant to the terms of the Policy, from the onset of his disability in December of 1997 through the end of, and including, April 2004.

28. Dr. John Doe is entitled to Total Disability Benefits, pursuant to the terms of the Policy, from May 1, 2004, to the present, at an amount of $5,000 per month, continuously until the age of sixty-five.

29. Finally, Dr. John Doe is entitled, pursuant to the terms of the Policy, to a refund of premiums which became due and were paid from the onset of the disability in December of 1997, through the present. Dr. John Doe's premiums are $447.92 per quarter, $141.31 per month.

### Count II – Bad Faith

30. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 29.

31. By denying payment of Disability Benefits to Dr. John Doe and by wrongfully refusing to acknowledge that he was and is disabled despite having been provided evidence thereof pursuant to the terms of the Disability Policy, Defendant Provident is conducting administration of the Policy in bad faith and with the wrongful purpose and intention of inflicting physical, emotional and economic injury upon Dr. John Doe.

32. Plaintiff alleges that after a reasonable opportunity for further investigation or discovery, there is likely to be evidentiary support for the contention that Defendant Provident's conduct was intentional, malicious, and willful and its conduct was authorized or ratified by officers, directors, or managing agents of Defendant. Plaintiff further alleges that after a reasonable opportunity for further investigation or discovery, there is likely to be evidentiary support for the contention that Defendant Provident has a policy of prolonging its claims process, seeking additional information, and subjecting policy holders to a non-existent appeals process in order to discourage policy holders from pursuing claims under their contracts of insurance.

### Count III – Injunctive and Declaratory Relief

33. Plaintiff realleges and incorporates herein by reference the foregoing paragraphs 1 through 32.

34. Defendant Provident has a legal duty to commence payment to Dr. John Doe of benefits under the Policy.

35. Dr. John Doe's remedies at law are inadequate, and he will continue to suffer immediate and irreparable harm if Defendant Provident is not enjoined from refusing to pay him benefits under the Policy

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests compensatory and punitive damages from Defendant, together with interest, costs, and reasonable attorney's fees in excess of the statutory amount in diversity cases. Further, Plaintiff requests an order declaring that Plaintiff is entitled to Benefits under the Policy and requiring Defendant Provident to commence payment to Plaintiff of Benefits under the Policy.

## JURY DEMAND

Plaintiff demands a jury trial as to all factual matters alleged and as to all Counts triable by jury.

        Respectfully submitted,

        HANNON LAW GROUP, LLP

        */s/ Michael Hannon*
        J. Michael Hannon, #352526
        1901 18th Street, NW
        Washington, DC 20009
        (202) 232-1907
        Fax:  (202) 232-3704
        jhannon@hannonlawgroup.com

        *Attorney for Plaintiff*