UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, M.D., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No.: 1:07cv00633 (HHK) |
| ) | |
| PROVIDENT LIFE & ACCIDENT ) | |
| INSURANCE COMPANY, ) | |
| ) | |
| Defendant. ) | |

**OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**

Plaintiff John Doe, M.D., through his attorneys HANNON LAW GROUP, LLP, and pursuant to Fed. R. Civ. P. 12(b)(6), respectfully presents this Opposition to Defendant's Partial Motion to Dismiss.

**ARGUMENT**

The standard governing a Motion to Dismiss is designed to dismiss only those claims where it's clear, beyond doubt, that the Plaintiff is unable to prove any set of facts in support of his claim that would entitle plaintiff to relief. *See Transworld Prods. Co. v. Canteen Corp.*, 908 F. Supp. 1, 2 (D.D.C. 1995). The allegations and all reasonable inferences *must* be construed in a light most favorable to the non-moving party. *See Id.* Defendant Provident contends that Count II of Dr. John Doe's Complaint should be dismissed "because a claim for bad faith breach of contract is not recognized under District of Columbia Law." *See* Defendant's Partial Motion to Dismiss ("Motion to Dismiss") at 8. Provident further alleges that Dr. John Doe's claim for punitive damages is "based on alleged breach of contract and therefore must also be dismissed." *See Id.*

Plaintiff John Doe's Count II Bad Faith claim is a tort claim based on the duty of good faith implied in all contracts, particularly insurance contracts.  Further, punitive damages are available where an alleged breach of contract merges with, and assumes the character of, a willful tort.

I. **Plaintiff's Claim Need Not Be Summarily Dismissed**

Defendant Provident contends that Plaintiff John Doe's bad faith claim should be dismissed because it "represents an attempt to bootstrap a tort claim into a case arising strictly out of contract."  *See* Motion to Dismiss at 5.  Defendant is correct that in some circumstances, courts have declined to recognize a "claim for bad faith breach of contract."  *See* Motion to Dismiss at 8.  For instance, a bad faith breach of contract claim is not available to individuals who are "strangers" to the insurance contract.  *See Messina v. Nationwide Mut. Ins. Co.,* 998 F.2d 2, 4 (D.C. Cir. 1993).  Nor is the bad faith claim available for injuries or claims not covered by the insurance contract.  *See Washington v. Government Employees Ins. Co*., 769 F. Supp. 383, 384 (D.D.C. 1991) (GEICO) (plaintiff brought suit against an insurer that denied her claims for injuries sustained in an accident caused by an uninsured motorist).  Nor does the District of Columbia generally recognize the payment of attorneys' fees through a breach of contract claim between an insurer and an insured.  *See Continental Ins. Co. v. Lynham*, 293 A.2d 481 (D.C. 1972) (insureds brought an action against their insurer seeking to recover the cost of damages to their motor boat, plus punitive damages and attorneys' fees incurred in bringing the action).

Defendant Provident relies heavily on *Fireman's Fund Insur. Co. v. CTIA*, et al., 2007 U.S. Dist. LEXIS 18958, No. 06-854, *2 (D.D.C. 2007).  The Court in *Fireman's* held that a claim for bad faith *breach of contract* is not recognized by District of Columbia law.  *See Id* at *2.  *Fireman's*, however, addresses a different issue than the one at hand.  Specifically,

*Fireman's* addresses an attempt to recoup punitive damages and attorney's fees in contract. *See Id* at *5. Regardless, the decision in *Fireman's*, though persuasive, is not binding on the Court in this action.

Indeed, the D.C. Court of Appeals has not squarely addressed the question whether a bad faith denial of an insurance claim constitutes an independent tort under D.C. law. This District Court has considered the issue in two separate reported cases, but these cases are in direct conflict. Compare *GEICO,* 769 F. Supp. at 387 ("District of Columbia law does not recognize the tort of bad faith denial of an insurance claim.") with *Washington v. Group Hospitalization, Inc.,* 585 F. Supp. 517, 520 (D.D.C. 1984) (holding that the District of Columbia is among the "many jurisdictions [that] have recognized a cause of action in tort for the bad faith refusal of an insurer to pay").

Even under the particular facts in *GEICO*, the Court found that the plaintiff *failed to present* sufficient evidence allowing her to recover under the tort of bad faith refusal to pay. *See GEICO*, 769 F. Supp. at 387.[1] The Court did not necessarily conclude that such a right did not exist under District of Columbia law at all. Indeed, the District Court in GEICO correctly recognized that a decision from the District of Columbia Court of Appeals recognized a cause of action in tort based on an insurer's refusal to pay an insurance claim. *See Washington,* 585 F. Supp at 520. Further, in *State Farm Mut. Auto. Ins. v. Hoang*, 682 A.2d 202 (D.C. 1996), the D.C. Court of Appeals stated that ". . . even if this court recognized a separate tort of bad faith denial of an insurance claim, *an issue we do not decide here*, Hoang did not plead that cause of action." *See State Farm Mut. Auto. Ins. Co. v. Hoang*, 682 A.2d 202, 208-209 (D.C. 1996)

---

[1] The policy in *GEICO* provided personal injury protection benefits to passengers injured by uninsured motorists. It was disputed whether Washington, the Plaintiff, was a passenger at the time of the incident. *GEICO*, therefore, based its denial of the claim on Washington being a pedestrian, not a passenger. The particular facts of the case, therefore, contributed to the Court's findings.

(emphasis supplied). The issue, therefore, is not as "garden variety" and squarely resolved as Defendant Provident alleges.

The notion of a tort claim for bad faith stems from the duty of good faith implied in all contracts. *See Paul v. Howard Univ.*, 754 A.2d 297, 310-11 (D.C. 2000). Plaintiff John Doe alleges that by denying payment of Disability benefits covered by the Disability Policy and by wrongfully refusing to acknowledge that he was disabled despite being provided competent evidence thereof pursuant to the terms of the Disability Policy, Defendant Provident is conducting *administration* of the Policy in bad faith and with the wrongful intention of inflicting physical, emotional and economic injury upon Dr. Doe.

Provident has a duty to process and pay claims expeditiously and in good faith. *See Continental Ins. Co. v. Lynham*, 293 A.2d 481 (D.C. 1972). The expression "in good faith" refers to a lack of a good or moral intent as the basis for refusing to pay a loss. Conversely, "bad faith" means any frivolous or unfounded refusal to pay and if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised. *See* 3 J. Appleman, Insurance Law & Practice §1612 at 368-69 (1967).

A claim of "bad faith" is relevant, and recognized, because of the nature of the relationship between the insured and the insurer. An insurer owes a duty to exercise reasonable care and good faith in administering an insurance policy. *See Sadler v. Loomis Co.*, 776 A.2d 25, 37 (Md. App. 2001); *see also Zitelman v. Metro. Ins. Agency*, 482 A.2d 426, 427 n.1 (D.C. 1984) (it is well settled that a plaintiff may bring either a contract or a tort claim against an insurance broker for their failure to obtain requested insurance). Plaintiff's claim is viable under District of Columbia law and should therefore not be summarily dismissed.

## II. Plaintiff May Recover Punitive Damages Based On A Willful Tort

While punitive damages are generally disfavored in the law, they are most appropriate "[in] the realm of tort actions generally . . . in cases which present circumstances of extreme aggravation." *Sere v. Group Hospitalization, Inc*., 443 A.2d 33, 37 (D.C. 1982). The rule in this jurisdiction is that only where the alleged breach of contract assumes the character of a willful tort will punitive damages be available. *See Id*. The breach, therefore, "must merge with and assume the character of a willful tort." *Sere*, 443 A.2d at 37.

Dr. John Doe contends that Defendant Provident is conducting administration of the Policy in bad faith and with wrongful purpose and intent to injure. Bad faith is a cause of action against an insurance company that has intentionally denied the payment of a properly submitted insurance claim for no debatable reason. A Rule 12(b)(6) motion challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated a claim. "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The plaintiff need not plead the elements of a *prima facie* case in the complaint. *See Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000).

Dr. John Doe alleges that after a reasonable opportunity for further investigation or discovery, there is likely to be evidentiary support for the contention that Defendant Provident's conduct was intentional, malicious, and willful and its conduct was authorized or ratified by officers, directors, or managing agents of Defendant, thereby entitling Dr. Doe to punitive damages.

This contention is merited, in part, based on the manner in which Provident handled Dr. Doe's claim.  On December 17, 2005, Dr. Doe filed his claim for benefits under the Disability Policy with Provident, including a Physician's Statement as required by the Policy.  In support of his claim, Dr. Doe furnished Provident clear and sufficient medical proof that he was and is disabled from the practice of emergency medicine beginning in December of 1997.  Defendant Provident acknowledged receipt of Dr. John Doe's request for benefits, including the above referenced Physician's Statement, but denied his claim for benefits under the Policy, despite the fact that Dr. Doe furnished documentation of his PTSD.

Yet, on February 14, 2006, Provident informed Dr. Doe that it considered August 29, 2005, the start date of his disability.  Provident stated that they required additional documentation and support of Dr. John Doe's illness and limitations.  As per Provident's request, Dr. Doe submitted summaries from his treating health care providers during the time in question, affirming that he suffered and suffers from chronic PTSD related to repeat emotional traumas from his long term practice as a trauma physician, that his depressive tendencies predispose him to PTSD, and that the PTSD has exacerbated his depression.

Despite its earlier letter providing Dr. Doe with a disability date, Provident contrarily concluded that "restrictions or limitations due to a psychiatric disorder were not supported in April 2004, and are not supported at this time."  Another Provident letter, dated May 16, 2006, informed Dr. Doe that the information contained in his file failed to support his disability claim.  By letter dated June 15, 2006, Provident asserted that Dr. John Doe's condition did not limit or interfere with his ability to perform his job.  Provident further volunteered to Plaintiff that he could the denial of claim decision.  However, the Disability Policy issued by Provident to Dr. Doe does not include any provision for an appeal process.  Plaintiff contends that such "appeal

process" is either non-existent or unproductive, and anticipates that discovery will prove the same.

Plaintiff contends that Provident's letters were a pretext by which it hoped to discourage Dr. Doe from asserting his rights under the Disability Policy, as were Provident's repeated requests for additional information and medical records. Provident denied benefits, even though the Physician Statement provided by Dr. John Doe clearly and unequivocally stated that his disability began in December of 1997. There was no contrary evidence in the Provident record.

Plaintiff Dr. John Doe further alleges that after a reasonable opportunity for further investigation or discovery, there is likely to be evidentiary support for the contention that Defendant Provident has a policy of prolonging its claims process, seeking additional information, and subjecting policy holders to a non-existent appeals process in order to discourage policy holders from pursuing claims under their contracts of insurance.

Plaintiff believes that Defendant Provident is owned by UNUM Provident. Just short of 3,000 lawsuits have been filed against UNUM Provident in the past five years. *See* http://www.bad-faith-insurance-claims.com. This website reports that in one case, UNUM Provident denied the claim of an eye surgeon who developed a tremor and was forced to stop operating on patients. *See Chapman v. UnumProvident Corp.,* No. A102699 (Cal. Ct. App.). After four months, UNUM Provident sent the doctor a letter denying disability insurance, claiming that the company did not think he was disabled. The doctor was later diagnosed with Parkinson's disease; Provident continued to deny disability benefits. *See* http://www.bad-faith-insurance-claims.com.

The abovementioned website further reports that a class action lawsuit was filed on November 5, 2002, against UNUM Provident in a Manhattan federal court. *See Id.* Former

employees, as well as insurers, claimed that UNUM Provident denied legitimate claims in order to meet financial goals.  The class action alleged UNUM Provident created a paper trail to back the denied claims using Provident's own medical staff.  *See Id.*  Provident denied these accusations but over a dozen former and present employees verified the allegations, including physicians and former vice presidents of UNUM Provident.  *See Id.*

Further, a chiropractor was denied disability benefits and spent years in grueling and expensive litigation while she survived on welfare and food stamps.  Finally, a judge ordered UNUM Provident to "obey the law" and stop using biased medical examiners, withholding information about benefits from policyholders and canceling categories of claims.  *See Hangarter v. Paul Revere Life Ins. Co.*, 236 F. Supp. 2d 1069 (N.D. Cal. 2002).  The Court in *Hangarter* also stated that Provident had developed "a comprehensive system for targeting and terminating expensive claims like Plaintiff's . . . a professional in California with an 'own-occupation' policy.  Under [Provident's] risk analysis her claim fit the profile as one with a potentially adverse financial impact on [Provident]."  *See Id* at 1084.

With its high premiums, long-term policies, low marketing costs and limited risks, disability policies can be a lucrative source of profit for Provident.  Provident has an incentive to unduly prolong its claims procedure to discourage claimants, particularly those suffering from difficult illnesses.  It is not beyond doubt that Dr. John Doe can prove this contention.  Given the state of District of Columbia law, this Court should not preempt his claim at this time.

## **CONCLUSION**

A motion to dismiss pursuant to Rule 12(b)(6) requires the Court to determine, beyond all reasonable doubt, that Defendant Provident did not breach its fiduciary duty in administration of Dr. John Doe's Disability Policy. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). The basis of the tort is the relationship between the insurer and the insured and the insurer's breach of the duty of good faith and fair dealing implicit in every contract. Defendant Provident did not have a reasonable basis for denying benefits under the policy. *See Washington*, 585 F. Supp. at 520. Dr. John Doe contends that Provident willfully conducted administration of its policy in bad faith. The allegations construed in a light most favorable to Dr. John Doe, the Court should reject Provident's Partial Motion to Dismiss.

Respectfully submitted,

HANNON LAW GROUP, LLP


        *//s// J. Michael Hannon*
J. Michael Hannon, #352526
1901 18th Street, NW
Washington, DC 20009
(202) 232-1907
Fax: (202) 232-3704
jhannon@hannonlawgroup.com

*Attorney for Plaintiff*

**CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that a copy of the foregoing **OPPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS**, along with a proposed order, was sent via electronic filing this 18th day of June, 2007, to:

David E. Constine, III
A. Tevis Marshall
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23218-1122
(804) 697-1200

Tameka M. Collier
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134

                *//s// J. Michael Hannon*
                J. Michael Hannon

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN DOE, M.D., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )    Civil Action No.: 1:07cv00633 (HHK) |
| | ) |
| PROVIDENT LIFE & ACCIDENT | ) |
| INSURANCE COMPANY, | ) |
| | ) |
|     Defendant. | ) |

## ORDER

Upon consideration of Defendant Provident Life & Accident Insurance Company's Motion for Partial Summary Judgment and of Plaintiff's Opposition thereto, and the Court being duly advised in the premises, it is, by the Court, this ____ day of _____, 2007,

**ORDERED**, that Defendant Provident MAMSI Life and Health Insurance Company's Motion for Partial Summary Judgment, is hereby, **DENIED**.

_____
THE HONORABLE HENRY H. KENNEDY, JR.
District Judge

Copies to:

J. Michael Hannon, Esq.
HANNON LAW GROUP, LLP
1901 18th Street, NW
Washington, DC 20009

David E. Constine, III
A. Tevis Marshall
Troutman Sanders LLP
P.O. Box 1122
Richmond, VA 23218-1122
(804) 697-1200

Tameka M. Collier
401 9th Street, NW
Suite 1000
Washington, D.C. 20004-2134