UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

_____
ALLIANCE TO SAVE THE MATTAPONI, )
 *et al.*,                      )
           Plaintiffs,          )
      v.                        )
                                )   Civil Action No. 06-1268 (HHK/AK)
UNITED STATES ARMY CORPS        )
OF ENGINEERS, *et al.,*         )
           Defendants.          )
_____)

## MEMORANDUM ORDER

Pending before the Court is the Motion of Plaintiffs Alliance to Save the Mattaponi, *et al.* (collectively, the "Alliance Plaintiffs") to Compel Production of Record or for Leave to Obtain Discovery, and for Protective Order ("Motion") [57]; Motion to Compel Agency Record filed by Plaintiff-Intervenors Mattaponi Indian Tribe and Chief Carl T. Lone Eagle Custalow ("Supplemental Motion") [56];[1] Defendant United States Environmental Protection Agency's Memorandum in Opposition to the Motion and Supplemental Motion ("Opposition") [60], Plaintiffs' Reply to the Opposition ("Reply") [62] and Plaintiff-Intervenors' Reply to the Opposition ("Supplemental Reply") [61]. This case challenges the issuance of a permit under Section 404 of the Clean Water Act, 33 U.S.C. §1344, by the United States Army Corps of Engineers (the "Corps") to the City of Newport News ("Newport News") to construct a 1,526 acre reservoir in King William County, Virginia ("King William Reservoir"). (Complaint [1] at ¶1.) The Corps issued the Department of the Army Permit No. 93-0902-12 to Newport News on

---

[1] The Supplemental Motion is a three page motion that contains argument consistent with that contained in the Motion.

-1-

November 15, 2005.  (*Id.* at ¶2.)  Pursuant to the Administrative Procedures Act ("APA") , Section 706 [addressing the scope of APA review], the Plaintiffs seek judicial review of the Environmental Protection Agency's ("EPA") failure to veto the permit pursuant to Section 404(c) of the Clean Water Act.[2]  More specifically, the Plaintiffs request the provision of an administrative record by EPA, but EPA denies that an administrative record exists.

On April 2, 2007, the Corps filed with this Court a Notice of Filing [of] Administrative Record relating to the review and issuance of the Permit in this case.  (Notice [31].)  The Alliance Plaintiffs assert that the Corps' Administrative Record contained "hundreds of EPA documents, *including* documents that specifically show that EPA believed that the issuance of the permit in this case would violate the binding requirements set forth in the §404(b)(1) Guidelines and would result in unacceptable adverse impacts under §404(c)."  (Motion at 3.)[3]  Plaintiffs move to compel Defendant EPA to "compile and produce a record consisting of all the information and materials that were before the agency in reviewing the proposed King William Reservoir permit and relating

---

[2] The trial court's May 30, 2007 Memorandum Opinion and Order [36] left standing Plaintiffs' APA claims against the EPA, but the trial court determined that "neither EPA nor the Corps may be sued pursuant to [the Clean Water Act] §505(a)(2)[.]" ([36] at 14.)  The trial court held that "plaintiffs' claims against EPA may [however] go forward under §706(2) of the APA, which allows courts to 'hold unlawful and set aside' arbitrary or capricious 'agency action.'" (Motion at 4, citing [36] at 13.)  The trial court further noted that the APA defines "agency action" to include the "failure to act."  (*Id.*) (citing 5 U.S.C. §551(13)).  Pursuant to 5 U.S.C. §706, the APA directs that a reviewing court "shall review the whole record or those parts of it cited by a party."  (Motion at 4.)

[3] *See* 40 C.F.R. §231.5(e) (an administrative record includes, *inter alia*, proposed 404(c) determination, public notice, written comments, and transcript or recording of any public hearing.)  According to the EPA, the Agency never undertook the 404(c) veto process where such a record would have been developed.  (Opposition at 4, n.3.)  On December 18, 2007, the Corps filed with the Court a Notice of Filing of Supplemental Administrative Record [64] but that supplementation does not change the status of the existing Motion to Compel.

to EPA's ultimate failure to veto the project." (Motion at 2.) EPA, however, claims that there is no administrative record because:

> [t]he "agency action" at issue in this case is actually a discretionary <u>inaction</u> - i.e., EPA's choice not to institute the process necessary to exercise a wholly discretionary authority. EPA was not required to, and did not, prepare a decision document or other memorialization of this choice, nor was the choice based on the outcome of an administrative process or a body of documents assembled at the time the choice was made.

(Opposition at 2.) The Alliance Plaintiffs argue that EPA's decision not to veto the permit is a decision that may be reviewed by this Court and "any documents generated by EPA or submitted to EPA that concern the Agency's review of the permit and its decision not to veto the permit should be compiled as an administrative record and produced forthwith." (Reply at 3-4.)

*See Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420 (1971) (review of agency action under the APA must be based "on the full administrative record that was before the [agency] at the time [it] made [its] decision.") *See also Biodiversity Legal Found. v. Norton*, 180 F. Supp.2d 7, 10-11 (D.D.C. 2001) (commenting that the APA requirement to review agency action on the basis of the whole record "applies whether a court is reviewing agency action or inaction.")

Alternatively, the Alliance Plaintiffs seek leave to obtain discovery of this information and to supplement the record. (Motion at 2.) Plaintiff-Intervenors assert that "EPA has provided no documents contemporaneous with the agency's decision not to invoke its authority and [this] leaves the Court without the ability to conduct a 'thorough, probing, in-depth review' of whether [EPA's] action was arbitrary and capricious." (Supplemental Motion at 2, citing *Overton Park*, 401 U.S. at 415-16.) EPA summarily dismisses Plaintiffs' request for discovery on grounds that a request for discovery of "all the information and materials that were before the agency in reviewing the

proposed King William Reservoir permit and relating to EPA's ultimate failure to veto the project," (Motion at 12), is vague and overly broad. (Opposition at 13 -14 & n.9.) EPA disagrees that discovery is warranted and "reserves the right to object to any discovery requests and seek a protective order if necessary." (Opposition at 14.)

EPA asserts that the Declaration of Donald S. Welsh, Regional Director for the United States EPA Region III, [Attachment 1] "serves the function of an administrative record" by providing the Court with a basis for judicial review. (Opposition at 2.) According to EPA, the Welsh Declaration, which was executed on September 27, 2007, "explain[s] the decisionmaker's reasons for choosing not to institute the Section 404(c) process." (*Id.*) *See Women Involved in Farm Economics* ["*WIFE*"] *v. USDA*, 876 F.2d 994, 999 (D.C. Cir. 1989) (where an agency has no obligation to explain its actions contemporaneously, "the entire [agency] record, or a good part of it, is actually created for the sole purpose of judicial review" and "much that is presented to the court is developed *post-hoc*."); *Partlo v. Johanns*, 2006 WL 1663380 *23 (D.D.C. 2006) (where the agency has no obligation to explain actions contemporaneously, by definition, a record may be created post hoc for purpose of judicial review).

The Alliance Plaintiffs distinguish the *WIFE* case, wherein the Court of Appeals reversed a decision of the District Court dismissing the statements of counsel offering a *post hoc* explanation of why the Secretary of Agriculture had acted as he did twenty years earlier. (Reply at 10-11.) In that case, Congress had explicitly exempted the Secretary from having to develop a contemporaneous record defining a term and the consequent development of a rule under the Agricultural Adjustment Act. Plaintiffs note that the EPA has not been accorded any similar exemption and thus, they argue that the Welsh Declaration should not serve as a substitute for a

contemporaneous administrative record. (Reply at 11.)   Similarly in *Partlo*, Congress explicitly exempted the Department of Agriculture from having to undertake notice and comment rulemaking under the APA and thus no administrative record was generated concerning the development of regulations in that case.  *See generally Partlo*, 2006 WL 1663380.

The question of whether the Welsh Declaration is an adequate substitute for an administrative record is the crux of the Alliance Plaintiffs' Motion [to Compel].  Their request for a Protective Order to exclude use of the Welsh Declaration [included in the "Conclusion" section of their Motion] is better characterized as a motion to strike the Declaration, a request that is unwarranted and legally unsupported.[4]  The heart of the Motion is instead Plaintiffs' contention that the Court not allow the EPA to use the Declaration in lieu of filing an administrative record, or alternatively, without some discovery by the Plaintiffs.  *See* Motion at 7, citing *American BioScience, Inc. v. Thompson*, 243 F.3d 579 (D.C. Cir. 2001) (where the D.C. Circuit vacated the district court's judgment in favor of the Food and Drug Administration on grounds that the court had relied on the parties' written or oral representations rather than the requiring the administrative record to be filed when determining the basis upon which the agency acted.)

As a preliminary matter, this Court cannot order the production of an administrative record when EPA contends that such record does not exist.  This does not however preclude the Court from allowing Plaintiffs to obtain discovery where the record may not be complete.  *See Amfac Resorts LLC v. U.S. Dept. of the Interior,* 143 F. Supp.2d 7, 11-12 (D.D.C. 2001) (holding that "[t]o obtain discovery from an agency in an APA case, a  party must overcome the standard

---

[4]In their Motion, Plaintiffs do not address the standard for obtaining a protective order or case law justifying a protective order.  In their Reply, the Alliance Plaintiffs move to strike the Welsh Declaration explaining the EPA's failure to act, on grounds that it is "an improper *post-hoc* rationalization." (Reply at 13.)

presumption that the 'agency properly designated the Administrative Record.'" (citing *Bar MK Ranches v. Yuetter*, 994 F.2d 735, 740 (10th Cir. 1993)). The *Amfac* Court found that "a party must make a significant showing . . . that it will find material in the agency's possession indicative of bad faith or an incomplete record." 143 F. Supp.2d at 12. The *Amfac* case discusses the completeness of an administrative record as follows:

> First and most basically, a complete administrative record should include all materials that "might have influenced an agency's decision," and not merely those on which the agency relied in its final decision. *See Bethlehem Steel v. EPA*, 638 F.2d 994, 1000 (7th Cir. 1980) (citing *National Courier Association v. Board of Governors of the Federal Reserve System*, 516 F.2d 1229, 1241 (D.C. Cir. 1975)). Thus, if the agency decisionmaker based his decision on the work and recommendation of subordinates, those materials should be included as well. *See Bar MK Ranches*, 994 F.2d at 739 ("The complete administrative record consists of all documents and materials directly or indirectly considered by the agency.")

*Amfac* at 12, citing 5 U.S.C. §706. The *Amfac* Court cautioned however that "deliberative intra-agency memoranda and other such records are ordinarily privileged, and need not be included in the record." *Amfac* at 12.

A review of Donald Welsh's Declaration lends support to Plaintiffs' argument that they should be permitted to obtain discovery based on Welsh's statements and the documents referenced in his Declaration, because the record before the trial court is incomplete. For example, Welsh indicates that his "understanding of the King William Reservoir project and Permit No. 93-0902-12 was based upon briefings by Region III staff" (Welsh Declaration at ¶8), and he states his reliance upon:

> statements and representations made to [him] by members of the Region III Staff with personal knowledge of the King William Reservoir project, [whereby he] **was aware that EPA had reviewed and commented upon the draft and final Environmental Impact**

> **statements** for the . . . project pursuant to Section 309 of the Clean Air Act, and had submitted comments regarding the application for Permit. . . .

(Welsh Declaration at ¶5.) (emphasis added by the Court).[5]

Welsh further indicates that his understanding of the Reservoir project was based upon a number of considerations including "briefings by Region III staff" and his decision not to initiate Section 404(c) proceedings involved a balancing of other considerations including but not limited to "public comment" (¶10b) , awareness of "competing studies and controversy" (¶10c) , his understanding of the "goal of the Mitigation Plan" (¶10e), "coordination procedures described in a *Memorandum of Agreement* . . ." (¶10f), and information about "the Ware Creek Project" (¶10h).[6] In Paragraph 7 of his Declaration, Welch states, without further explanation, that "[i]n approximately November 2005, [he] determined not to initiate with respect to Permit No. 93-0902-12 the process that is prerequisite for exercise of EPA's authorities pursuant to Section 404(c) of the CWA" and he "recognized that it was unlikely that EPA would initiate Section 404(c) proceedings at a later date." (Welsh Declaration at ¶7.)

Welsh indicates that his November 2005 decision "not to take specific action at that time" was communicated "verbally to relevant Region III staff" and "not memorialize[d] . . . in writing." (Declaration, ¶9.) Plaintiffs assert that "[e]ven if the [EPA] did not contemporaneously designate a formal Record of Decision . . ., EPA does have documents relevant to its review of the Corps' permit and its decision to not veto the permit." (Reply at 5.) Plaintiffs request that the Court order

---

[5]The Court notes that there may be documents that reflect these statements upon which Welsh relied, although EPA may claim that such documents are privileged.

[6]In his Declaration, Welsh states that he was "aware that the proposed King William Reservoir project would result in the loss of an intact and functioning ecosystem, and that it would be difficult to fully mitigate for these impacts. . . ." (Welsh Declaration at ¶10e.)

EPA to produce such documents. Notably, "EPA does not claim that no . . . internal documents [such as memoranda and correspondence] exist - only that, to the extent that they do, they are not part of the administrative record." (Reply at 8, citing *San Luis*, 751 F.2d at 1325-1326.) EPA acknowledges that "[b]ecause [the Agency] exercised other statutory and regulatory responsibilities related to the Permit, moreover, EPA naturally has documents related to the King William Reservoir" but EPA denies that "these documents are "part of any EPA administrative record pertaining to EPA's choice not to institute the Section 404(c) veto process." (Opposition at 8-9, *see* Welsh Declaration ¶¶4-5, 10.)

A review of the Welsh Declaration leads this Court to question the completeness of the record before the trial court as a proffered "administrative record." It is the opinion of this Court that standing alone the Declaration does not provide the trial court sufficient evidence to make a ruling under the APA on whether the EPA's failure to take any action on the permit issued by the Corps was arbitrary and capricious. The Declaration contains a series of conclusions reached by Director Welsh, relying on "statements and representations made to me by members of the Region III staff with personal knowledge of the [ ] project; . . ." (Declaration, ¶1), "[i]t is my understanding that I have discretion to initiate CWA Section 404(c) proceedings with respect to any particular permit, and that I am not required to initiate CWA Section 404(c) proceedings even if the EPA disagrees with a permitting decision by the Corps." (Declaration, ¶6.) He based his decision on a number of enumerated factors but doesn't provide any substantive factual reasons to support his decision. By way of example, he cited as one reason that various statements by members of the public and the project proponent, ostensibly at the hearing conducted by the

Corps, led him to believe that the Corps decision regarding the permit would be the subject of litigation regardless of whether or not EPA exercised its Section 404(c) authority, and that for EPA to exercise its authority would add a layer of process and delay without contributing to the resolution of issues. (Declaration, ¶10g.) It could be argued that a decision based in part on a rationale that the issuance of the permit might result in a lawsuit reflects an abdication of EPA's responsibility under the CWA. Thus it is the finding of this Court that the proffered scant explanation of the factors considered by EPA in determining not to veto the permit as set forth in the Welsh Declaration is an inadequate substitute for an Administrative Record that would afford the trial court a basis for determining whether the decision of the EPA was arbitrary or capricious. Accordingly, it is this 29th day of January, 2008,

    ORDERED that the Alliance Plaintiffs' Motion to Compel Production of Record or for Leave to Obtain Discovery [57] is denied in part, granted in part and deferred in part. The Court denies Plaintiffs' request that the Welsh Declaration be disallowed. Within thirty days from the date of this Memorandum Order, EPA is directed to compile and produce a record consisting of the information and materials that were before the Agency in reviewing the proposed King William Reservoir permit and providing the information that formed the basis for EPA's ultimate decision not to veto the project. In the event the EPA does not produce such a record, the Court will reconsider Plaintiffs' request for leave to take discovery to supplement the Welsh

Declaration. It is further

ORDERED that the Motion to Compel Agency Record filed by Plaintiff-Intervenors [56] is granted, consistent with the aforementioned ruling on the Motion [57].

_____/s/_____
ALAN KAY
UNITED STATES MAGISTRATE JUDGE