UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|   |   |   |
|---|---|---|
| JOHN DOE, M.D., ) | | |
| Plaintiff, ) | | |
| v. ) | Civil Action No. 07-633 (HHK/AK) | |
| ) | | |
| PROVIDENT LIFE & ACCIDENT ) | | |
| INSURANCE COMPANY, ) | | |
| Defendant. ) | | |

## MEMORANDUM ORDER

Pending before this Court is Plaintiff's Motion for Protective Order ("MPO") Limiting the Scope of the Scheduled Independent Medical Evaluation ("IME") [20], the opposition to the Motion ("Opposition") [26] by Defendant Provident Life and Accident Insurance Company ("Provident"); and Plaintiff's reply to the Opposition ("Reply") [28].[1] Also pending before this Court is Defendant's Motion for Extension of Deadline for an IME Report ("Motion") [25], and Plaintiff's opposition to the Motion.[2] Defendant opposes the Plaintiff's request for a protective order limiting the scope of the IME and asks that this Court require Plaintiff to complete the IME and to reimburse Defendant for the fees and costs incurred as a result of his Motion and any fees associated with the rescheduling of the IME.

### I. Background

Plaintiff John Doe ("Plaintiff" or "Doe") brought suit against Defendant, the Provident

---

[1] Plaintiff seeks leave of this Court to late file his Reply. *See* Reply at 1.

[2] Plaintiff's Reply [28] also serves as an opposition to the Motion [25]. During a telephonic conference to preliminarily discuss the issues addressed in these motions, this Court notes that the deadline for the IME report is contingent on the Court's ruling on the MPO.

-1-

Life & Accident Insurance Company under theories of breach of contract and bad faith relating to Provident's denial of disability benefits pursuant to Provident's Disability Income Insurance Policy No. 6-334-675592. (Memorandum in support of MPO ("Memorandum") at 1; Motion at 1.) Plaintiff claims to have become totally disabled from his occupation as an emergency room physician, in April 2004, due to post-traumatic stress disorder ("PTSD") (Opposition at 1.) Doe seeks "more than $600,000 in disability benefits from April 2004 through his sixty-fifth birthday in 2014, residual monthly disability benefits of nearly the same amount dating back to 1997, plus extra-contractual punitive damages, costs, fees and interest." (Motion at 2; *see* Complaint at ¶¶27-28, and p.8.)

Plaintiff acknowledges that he "agreed to take part in an [IME] with a doctor of Defendant's choosing which was initially discussed during the parties Rule 26(f) conference in August, 2007." (Memorandum at 1-2.) By electronic mail exchanged between counsel, dated November 15, 200 through November 20, 2007, Defendant proposed that Dr. Neil Blumberg would conduct Doe's IME, which would include a three-hour interview and three hours of testing. *See* Opposition, Exh. 1 (e-mail exchange). Plaintiff subsequently allowed Dr. Blumberg to conduct the interview portion of the psychiatric IME but would not submit to the psychological testing.[3] Plaintiff moves for a protective order to preclude the Defendant from being allowed to complete such testing.

## II. Legal Standard

In general, a party is entitled to discover information that is "reasonably calculated to lead

---

[3]According to Defendant, "Plaintiff waited until December 31, 2007-just three business days before the IME that had been scheduled for more than six weeks - to file his Motion for Protective Order seeking to preclude the testing component of the IME." (Opposition at 5.)

to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). A party may discover information that is not privileged and "is relevant to the claim or defense of any party." *Id.* For purposes of discovery, relevance is broadly construed. *See, e.g., Burlington Ins. Co. v. Okie Dokie, Inc.*, 368 F.Supp. 2d 83, 86 (D.D.C. 2005).

Courts have broad discretion to enter orders limiting and managing discovery. *See, e.g., McKesson HBOC, Inc. v. Islamic Republic of Iran*, 226 F.R.D. 56, 57 (D.D.C. 2004); *Doe v. District of Columbia*, 230 F.R.D. 47, 50 (D.D.C. 2005). Pursuant to Fed. R. Civ. P. 26(b)(2)(iii), the court may limit discovery on its own initiative, if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issue at stake in the litigation, and the importance of the proposed discovery in resolving the issues." *See Hammerman v. Peacock*, 108 F.R.D. 66, 67 (D.D.C. 1985) (discussing amendments to Rule 26(b)).

A party may move for a protective order, pursuant to Fed. R. Civ. P. 26(c) "to protect a party . . . from annoyance, embarrassment, oppression, or undue burden or expense, including . . . [an order] that the disclosure or discovery not be had; [or] that the disclosure or discovery may be had only on specified terms and conditions . . . . " The movant must establish "good cause" under Rule 26(c) "by demonstrating the specific evidence of the harm that would result. . . ." *Jennings v. Family Mgmt.*, 201 F.R.D. 272, 275 (D.D.C. 2001). The movant carries the burden of establishing that a protective order should be granted. *Fonville v. District of Columbia*, 239 F.R.D. 38, 40 (D.D.C. 2005). The Court employs a balancing test in determining whether to grant a motion for protective order, weighing the burdensomeness to the moving party against the

requestor's need for, and relevance of the information sought. *Jennings*, 201 F.R.D. at 275 (citing *Lohrenz v. Donnelly*, 187 F.R.D. 1, 3 (D.D.C. 1999); *Alexander v. F.B.I.*, 186 F.R.D. 71, 75 (D.D.C. 1998)).

Federal Rule 35 authorizes courts to order parties to submit to mental or physical examinations in a case where such party's mental or physical condition is in controversy; there is good cause for such examination; and the person to be examined receives notice specifying the time, place, manner, conditions and scope of such examination. *See* Fed. R. Civ. P. 35(a).

### III. Legal Analysis

The grounds for Plaintiff's Motion for Protective Order Limiting the Scope of the Scheduled Independent Medical Evaluation [20] are threefold:1) that psychological testing of Plaintiff in connection with the IME is "needlessly intrusive;"2) that ERISA [Employee Retirement Income Security Act] allegedly limits this Court's review to the administrative record; and 3) that Defendant's attempt to take an IME at this point in the litigation constitutes "harassment" and "undue burden" because the evidence does not relate back to the time when the decision to deny benefits was made.  *See* Plaintiff's Memorandum at 2-5.

Addressing Plaintiff's assertion that the IME is "needlessly intrusive," Defendant argues that Plaintiff's MPO should be denied on grounds that "Plaintiff's counsel previously agreed in writing to the testing to which it now objects." (Opposition at 6.)   Plaintiff responds by asserting that while he agreed to a "medical examination [that] he attended . . . with Dr. Blumberg on January 4, 2008," (Reply at 2), any additional testing is "needlessly intrusive."   Plaintiff fails to provide any support for his conclusory allegation and instead attempts to shift the burden to Defendant to justify the need for an examination. Defendant responds by asserting that it has met

its burden under Rule 35 of demonstrating why the psychological testing should go forward, based on satisfaction of the three prerequisites of that Rule.

Defendant argues that the crux of Plaintiff's claims is that he is totally disabled because of PTSD; accordingly, there can be no dispute that Plaintiff has put his mental health in issue. *See* Opposition at 8, citing several cases supporting the proposition that where a plaintiff's claim puts his mental health at issue, federal courts generally require psychiatric and/or psychological IMEs over the objection of the examinee. Plaintiff does not cite any case law to rebut Defendant's proposition nor does he make any cogent argument that his mental health is not at issue in this case. Instead, Plaintiff asserts that he never agreed to psychological evaluation by Dr. Blumberg, whom he argues is not a psychologist. Dr. Blumberg's Declaration, attached as Opposition, Exh.2, establishes that Blumberg, a psychiatrist, has performed numerous psychiatric IMEs and "routinely administered the psychological tests at issue as part of those IMEs" and according to him, such testing "entails nothing more than the completion of objective, standardized testing." (Exh. 2.) This Court finds that Defendant has satisfied the first prerequisite of Rule 35(a), showing that a party's mental condition is in controversy.

Plaintiff makes a blanket assertion that "Defendant has offered no good cause for requiring testing in addition to the psychiatric assessment." (Memorandum at 5.) Defendant asserts that it has shown good cause to justify the psychological testing based on the fact that Plaintiff's counsel previously agreed that Plaintiff would participate in an IME [which is the reason Defendant did not file a separate motion for entry of a Rule 35 Order]. (Opposition at 9 & n.2.) Defendant also relies upon its assertion that "the psychological testing at issue will provide evidence that is directly relevant to the central issue in Plaintiff's breach of contract and bad faith

claims: whether Plaintiff is, in fact, totally disabled from his occupation due to his claimed PTSD." (Opposition at 9.) Defendant additionally relies on the Blumberg Declaration, cited above, wherein Dr. Blumberg indicates that he routinely administers psychological tests in connection with the psychiatric assessment. Plaintiff proffers no response to Dr. Blumberg's statements, except to assert that a psychologist should conduct and interpret psychological tests. (Reply at 1-2.) Defendant has shown good cause in support of requesting an IME of Plaintiff that includes psychological testing.

With regard to the third prerequisite under Rule 35, Defendant confirms that Plaintiff was provided with sufficient notice of the time, place, manner, conditions and scope of the IME. *See* Exh. 1. Defendant further asserts that the Blumberg Declaration provides additional information about the examination and supports the allegation that providing the Plaintiff with [more detailed] advance notice of the tests could compromise the test results. The Court finds that Defendant has rebutted Plaintiff's unsupported assertion that the testing is "needlessly intrusive" and has further satisfied the requirements of Rule 35 by showing that the Plaintiff has put his medical condition at issue; there is good cause for an IME, and notice of the time, place, manner, conditions and scope of the IME was sufficient. Plaintiff fails to proffer any valid justification for refusing to complete the IME, particularly in light of the fact that his counsel agreed to the IME on more than one occasion.

Plaintiff's second argument in support of his MPO is based on his theory that because this case may involve ERISA claims, those claims would limit the evidence in this case to the administrative record. The Court notes that this argument is speculative and factually unsupported in light of the fact that ERISA has neither been pled by Plaintiff nor mentioned in

the Complaint.[4]  Defendant further notes that claims such as bad faith breach of contract and remedies such as extra-contractual damages and punitive damages are not available under ERISA, so there is additional inconsistency in Plaintiff's ERISA argument. Plaintiff proffers no response to these contentions.

Plaintiff further argues that Defendant should not be allowed to "defend its denial of Plaintiff's disability claim" by means of an "after the fact" psychiatric IME. (Memorandum at 2-3.)  Defendant addresses this contention by asserting that the evidence in this case is neither closed nor limited to the administrative record "because Plaintiff has not pled an ERISA claim." (Opposition at 10.)   Defendant argues that the IME is relevant to the main issues in Plaintiff's litigation, whether he is totally disabled due to his alleged PTSD, and Plaintiff proffers nothing to contradict this statement.  Without making a finding as to the ultimate admissibility of the results of the psychological testing [in relation to Provident's initial denial of benefits], the Court notes that Plaintiff's Complaint alleges that Doe is entitled to damages on a continuing basis going forward to the age of 65, (Complaint at ¶28), thereby assuming that Plaintiff's disability is ongoing and Plaintiff's mental state continues to be relevant

Accordingly, it is this 30th day of January, 2008,

ORDERED that Plaintiff's Motion for Protective Order [20] is **denied**.  Plaintiff is directed to attend and participate in the 3-hour testing component of the IME, which will be set

---

[4]Preclusion of Plaintiff's claims under ERISA is one of Defendant's affirmative defenses. Defendant herein asserts that even if the Complaint was amended to include ERISA claims, "the Plaintiff's psychiatric IME would be entirely permissible, because the policy at issue contains language that requires a *de novo* standard of review[,]" (Opposition at 11), contrary to Plaintiff's assertion that ERISA limits the fact finder to the administrative record. (Reply at 4.)  The Court does not address this argument because it is contingent on speculative prospective events.

-7-

for a time and place mutually convenient to Dr. Blumberg and the Plaintiff. The Court declines Defendant's request for costs and fees associated with the Motion or with rescheduling the IME. It is further

ORDERED that Defendant's Motion for Extension of Deadline for IME Report [25] is **granted**. Defendant's IME Report, which was initially due on January 15, 2008, shall be due eleven days after completion of the IME, consistent with the initial schedule agreed upon by the parties.[5]  It is further

ORDERED that the Court accepts Plaintiff's Reply [28] for filing, nunc pro tunc to its original due date.

```
              _____/s/_____
              ALAN KAY
              UNITED STATES MAGISTRATE JUDGE
```

---

[5] If the eleventh day is a weekend or holiday, the IME report shall be due on the next business day.