**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

JOHN DOE, M.D.                              )
                                           )
      Plaintiff,                      )
                                           )
v.                                         )     Civil Action No. 1:07cv00633
                                           )              (HHK) (AK)
PROVIDENT LIFE & ACCIDENT INSURANCE        )
COMPANY                                    )
                                           )
      Defendant.                      )

**DEFENDANT'S REPLY IN SUPPORT OF**
**MOTION FOR SUMMARY JUDGMENT**

Now comes Defendant, Provident Life & Accident Insurance Company ("Provident"), by

counsel, and states as follows for its Reply in Support of Motion for Summary Judgment:

**INTRODUCTION**

In this case, Plaintiff seeks $900,000 in disability insurance benefits for a psychiatric

condition – post-traumatic stress disorder ("PTSD") – which he contends has rendered him

disabled from his occupation as an emergency room physician since at least December 1997.[1]

Yet, in light of Plaintiff's admissions and the other undisputed facts set forth in Defendant's

Motion for Summary Judgment and Supporting Memorandum ("Defendant's Motion"),

Provident is entitled to summary judgment as to Count One of the Complaint (breach of contract)

because Plaintiff breached conditions precedent to coverage under the policy at issue ("the

Policy") by: 1) failing to provide Provident with notice of his claim until December 2005 -- *eight*

*years* after the onset of his alleged disability and at least *two years* after he admits he was

regularly employed as an internist (as opposed to an ER doctor); 2) refusing to comply with

---

[1] Plaintiff testified that he believes he has had PTSD since around 1995, *see* Pl.'s Dep. (Exh. 2 to Def.'s Mot. for Summ. J.) at 109, but that he worked full-time in the ER for two years thereafter until December 1997. *See id.* at 52-53, 66; Claim Form (Exh. 4 to Def.'s Mot. for Summ. J.) at PLACL00072.

Provident's repeated requests for the required proof of loss, including medical records from two of the three treating health care providers he identified as supporting his claim; and 3) failing to file suit until April 2007, more than *five years* after the latest possible expiration of the Policy's contractual limitations period in December 2001.  In addition, Provident is entitled to summary judgment as to Count Two of the Complaint (bad faith) because, *inter alia*, the District of Columbia does not recognize such a cause of action.

Defendant's Motion requires only that the Court interpret the stipulated language of the Policy in light of Plaintiff's admissions and the other undisputed facts and determine:

1.    As to Count One of the Complaint, whether, under well-established principles of Virginia insurance law, Plaintiff has carried his burden of demonstrating compliance with the conditions precedent to coverage under the Policy; and

2.    As to Count Two of the Complaint, whether the District of Columbia even recognizes the tort of bad faith denial of an insurance claim, and if so, whether any reasonable jury could find bad faith in light of the undisputed facts regarding Defendant's review of Plaintiff's claim.[2]

Even the case law cited by Plaintiff recognizes that when the facts are undisputed (as they are here), legal questions like those raised in Defendant's Motion are questions of law for the court to resolve.  *See, e.g., State Farm Mutual Automobile Ins. Co. v. Douglas*, 207 Va. 265, 268, 148 S.E.2d 775, 777 (1996) (cited in Pl.'s Opp'n at 26).  For the reasons explained below, the undisputed facts make it clear that Provident is entitled to summary judgment on any and all of the grounds set forth in Defendant's Motion.

## STATEMENT OF UNDISPUTED FACTS

Plaintiff's admissions and the other undisputed facts set forth in Defendant's Motion reveal a chronology of events which puts Plaintiff's disability claim in its proper context.  They

---

[2] Defendant's Motion does not require the Court "inevitably to render a medical opinion . . ." as Plaintiff suggests. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 1.

establish that:

- Plaintiff worked full-time as an ER doctor for twenty-five years despite a longstanding history of psychotherapy treatment for depression, anxiety, stress and adjustment disorders dating back to the early 1970s. *See* Def.'s Mot. at 7.

- Plaintiff had long aspired to retire young, and he admittedly obtained the financial means to semi-retire in 1997 at the age of 48, when he received hundreds of thousands of dollars in connection with the sale of his emergency medicine partnership. *See* Def.'s Mot. at 7-9.

- In December 1997, shortly after receiving his share of the buyout of his medical practice, Plaintiff decided – without the advice of a treating health care provider -- to reduce his time in the ER to one shift per week. *See* Def.'s Mot. at 8.

- Beginning in 2000, Plaintiff transitioned his part-time emergency medicine work to internal medicine, and in April 2004 he decided – again without the advice of a treating health care provider -- to stop taking ER shifts altogether and continue his part-time work in internal medicine alone. *See* Def.'s Mot. at 9-10.

- None of the three psychotherapists who treated Plaintiff between the alleged onset of his disability in 1997 and his alleged total disability in April 2004 either diagnosed Plaintiff with PTSD or treated him for PTSD. *See* Def.'s Mot. at 11-13.

- The therapist Plaintiff saw weekly from January 2003 through December 2004, Kevin Spera, concluded that at no time during his treatment did Plaintiff ever have PTSD, or was Plaintiff ever disabled from working as an ER doctor. *See* Declaration of Kevin Spera (to be filed under seal as **Exhibit 15**); Def.'s Mot. at 12-13.

- Plaintiff asked Mr. Spera on a number of occasions if his longstanding depression, anxiety and relationship issues rose to the level of a disability, and Mr. Spera told Plaintiff they did not. *See* Def.'s Mot. at 13.

- In November 2004, Plaintiff notified Provident of a vision problem that he claimed totally disabled him from ER medicine as of April 2004, but he ultimately did not pursue the claim because his eye doctor told him it would not be a long-term problem. *See* Def.'s Mot. at 13.

- Plaintiff admits that he did not provide Provident with notice of this disability claim until December 2005, at least *eight years* after the date on which he contends to have become disabled, and almost *two years* after he admits to being regularly employed as an internist (as opposed to an ER doctor). *See*

3

Def.'s Mot. at 10, 13-14; Claim Form (Exh. 4 to Def.'s Mot.) at PLACL00071-80.

- Plaintiff does not dispute that he failed to provide Provident with the actual medical records for two of the three treating physicians he identified in his Claim Form as supporting his alleged disability. *See* Def.'s Mot. at 13-20.

- Plaintiff did not file suit until April 2007, more than *five years* after the expiration of the four-year (at the latest) contractual limitations period and more than nine years after allegedly becoming disabled due to PTSD. *See* Apr. 4, 2007 Compl.

- Plaintiff is capable of working full-time as an internist and has done so on occasion to cover for colleagues who are on vacation, but he typically works no more than twenty to twenty-six hours per week, and he has not applied for any other jobs so as to carry a full-time schedule as an internist. *See* Def.'s Mot. at 10-11.

- Plaintiff made approximately $120,000 working *part-time* as an internist in 2007 -- or 88% of the $137,000 he reportedly earned working *full-time* as an ER doctor on his 1996 income taxes (the last year of full-time work for which Plaintiff has made his tax returns available). *See* Def.'s Mot. at 11.

In short, these admissions and undisputed facts tell the story of a man who was fully capable of working in the ER despite some longstanding psychological conditions but was anxious to retire as soon as possible; who *voluntarily* (and without medical direction) decided to semi-retire as soon as he had the financial resources to do so in 1997; who *voluntarily* (and without medical direction) transitioned his part-time work to a less demanding medical practice after his 50th birthday; and who proactively explored the possibility of seeking disability benefits with two different treating health care providers for two different medical reasons in 2004, before consulting with a forensic psychiatrist in 2005 for the express purpose of filing the claim now in suit. Plaintiff's claim seeks disability benefits retroactive to his last year of full-time work some eleven years ago.

## LEGAL AUTHORITY AND ARGUMENT

**I.    Plaintiff Breached a Condition Precedent to Coverage Under the Policy When He Failed to Provide Timely Notice of His Alleged Disability.**

The undisputed facts establish that Plaintiff's eight-year delay in notifying Provident of his alleged disability breached the timely notice of claim provision in the Policy, which is a condition precedent to coverage.  Plaintiff admits (as he must) that the Policy required him to give Provident written notice of his claim "within 20 days after a covered loss starts or as soon as reasonably possible." *See* Policy (attached as Exh. 1 to Def.'s Mot.) at PLASP00013.  Plaintiff also admits (as he must) that he did not notify Provident of his alleged disability until December 2005 -- at least *eight years* after the onset of his allegedly disabling condition in December 1997, and *twenty months* after he claims PTSD rendered him totally disabled from ER work in April 2004.  *See* Pl.'s Dep. (Exh. 2 to Def.'s Mot.) at 93, 108-09, 114, 118; *see also* Compl. at ¶¶ 10-12.

Defendant's Motion cites at least ten cases applying Virginia insurance law where courts have awarded insurers summary judgment because an insured's untimely notice breached similarly worded notice of claim provisions.  *See* Def.'s Motion at 23-25 (collecting and explaining cases).  Significantly, the delayed notices in these cases – ranging from as short as 51 days to as long as two years – are *much* shorter than the eight year delay at issue in the present case.  *See id.*  Plaintiff utterly fails to refute this longstanding and clear line of authority.  The only case he cites which addresses the timeliness of a claim notice involved an auto insurance claim that was delayed by a mere 65 days, *see* Pl.'s Opp'n at 26-27 (citing *State Farm Mutual Automobile Ins. Co. v. Douglas*, 207 Va. 265, 268, 148 S.E.2d 775, 777 (1966)), and he fails to cite a single case indicating that anything even approaching an eight-year delay could possibly satisfy a policy provision requiring notice "within 20 days after a covered loss starts or as soon

as reasonably possible." *See* Policy (attached as Exh. 1 to Def.'s Mot.) at PLASP00013.  In

short, the weight of authority indicating that Provident is entitled to summary judgment on this

basis is overwhelming.

Plaintiff's suggested explanation – that he did not realize he had PTSD until ten years

after its onset, when he self-diagnosed after reading an article in a periodical entitled "Bottom

Line Personal," *see* Pl.'s Opp'n at 27 – is neither credible nor sufficient to excuse his eight-year

delay in notifying Provident of his claim under Virginia insurance law.  As emphasized in

Plaintiff's Opposition, Plaintiff is a highly educated and trained medical doctor, who completed

undergraduate and medical degrees and a medical residency at prestigious academic institutions,

obtained board certification, and practiced full-time in the ER for twenty-five years before the

claimed onset of his alleged disability.  *See* Pl.'s Opp'n at 2.  In light of this background, and

Plaintiff's admission that he is familiar with the diagnostic criteria for PTSD, *see* Dep. of Pl.

(Exh. 2 to Def.'s Mot.) at 101, 104-05, it is simply not credible for Plaintiff to suggest that he did

not "become aware of the medical nature of his affliction" for ten years, or that he "had

insufficient information to provide notice to Provident of his claim any earlier than 2005."  Pl.'s

Opp'n at 27, 29.  If Plaintiff had enough information in December 1997 to justify reducing his

ER shifts to one per week due to a genuine medical condition, then he also had sufficient

information to fulfill his obligation to put Provident on notice of his alleged condition at that

time.

Regardless, even if Plaintiff's explanation is accepted as credible, it does not excuse his

eight-year delay under Virginia insurance law.  As indicated in Defendant's Motion, Virginia has

long held an insured will not be excused from providing notice as a condition precedent to

coverage unless he demonstrates that he was "totally (either physically or mentally) incapacitated

from acting in the matter." *Atlantic Life Ins. Co. v. Swann*, 160 Va. 125, 129-30, 168 S.E.423, 424-25 (1933); *Atlantic Life Ins. Co. v. Fugate*, 161 Va. 27, 30-31, 170 S.E. 573, 574-75 (1933); *see also* Def.'s Mot. at 25-26.  Plaintiff does not cite a single case to refute this longstanding rule of Virginia insurance law.  In addition, even Plaintiff does not contend that he has ever been either physically or mentally incapacitated.  Accordingly, Plaintiff cannot possibly carry his burden of demonstrating that he was incapable of giving notice within twenty days so as to avail himself of the "as soon as reasonably possible" provision.  *See Fugate*, 161 Va. 27, 30-31, 170 S.E. 573, 574-575 (1933) (as a matter of law, the plaintiff's numerous business activities negated his contention that he was physically or mentally incapable of giving notice of his disability insurance claim); *see also Swann*, 160 Va. at 129-130, 168 S.E. at 424-425.

Furthermore, even if Plaintiff could demonstrate that the "as soon as reasonably possible" language should apply, he fails to cite a single case to refute the authority collected in Defendant's Motion demonstrating that the eight year delay in this case is unreasonable as a matter of law.  *See Lyon v. Paul Revere Life Ins. Co.*, 289 F. Supp.2d 740 (W.D. Va. 2002) (summary judgment to disability insurer because insured's delay of more than two years violated condition precedent requiring notice "within 30 days after a covered loss starts, or as soon or as reasonably possible"); *Gresham v. America General Life Ins. Co. of New York*, 135 A.D.2d 1121, 523 N.Y.S.2d 282 (summary judgment to disability insurer because insured's delay of eight months breached requirement to provide notice within 20 days or "as soon as reasonably possible"); *see also Atlas Ins. Co. v. Chapman,* 1996 U.S. App. Lexis 18173 at *5 (4th Cir. July 23, 1996) (delay of 126 days "establish[ed] a material breach of contract by [the insured], releasing [the insurer] from any obligation it might otherwise have to cover [the loss].") (applying Virginia law); *Atlas Ins. Co. v. Chapman*, 888 F. Supp. at 745 (E.D. Va. 1995), *aff'd,*

1996 U.S. App. Lexis 18173 (4th Cir. July 23, 1996) (granting summary judgment to insurer because insured's delay of four months violated policy provision requiring notice "as soon as practicable") (applying Virginia law); *Liberty Mutual v. Safeco*, 223 Va. 317, 288 S.E.2d 469 (1982) (judgment for insurer because 51 day delay breached provision requiring notice "as soon as practicable"); *Equity Gen. Ins. Co. v. Patis*, 456 N.E.2d 348 (Ill. App. Ct. 1983) (affirming summary judgment for insurer because 4 1/2 month delay breached provision requiring notice "as soon as practicable").

Plaintiff's argument that Provident has not been prejudiced by his delay in noticing the claim is neither factually accurate nor legally relevant. It is not factually accurate because Plaintiff's eight year delay in notifying Provident of his claim has forever precluded Provident from obtaining an evaluation of Plaintiff's medical condition *at the time his allegedly disabling condition began in 1997*.[3]  Moreover, it is not legally relevant because no showing of prejudice to an insurer is required under Virginia law. *See Virginia Farm Bureau Mut. Ins. Co. v. Etheridge*, 12 Va. Cir. 284, 288 (Caroline County Cir. Ct. 1988) ("[A] policy requirement that the insured give its insurer written notice…as soon as practicable is a condition precedent to coverage, requiring substantial compliance, and no showing of prejudice is necessary.") (citing *State Farm Mutual v. Porter*, 221 Va. 592, 272 S.E.2d 196 (1980); *Erie Insurance Exchange v. Meeks*, 223 Va. 287, 288 S.E.2d 454 (1982); *Liberty Mutual v. Safeco*, 223 Va. 317, 288 S.E.2d 469 (1982)).

---

[3] Plaintiff's assertion that Provident completed its evaluation of his claim without a physician's review, Pl.'s Opp'n at 29, is a red herring. As the undisputed facts set forth in Defendant's Motion demonstrate, Provident was precluded from completing its evaluation of Plaintiff's claim -- to include review by an in-house doctor and perhaps an independent medical examination as well -- by Plaintiff's refusal to comply with Provident's repeated requests for the underlying records from two of the three treating health care providers Plaintiff identified as supporting his disability claim. *See* Def.'s Mot. at 17-20.

The undisputed facts and the overwhelming weight of controlling authority set forth in Defendant's Motion demonstrate that Plaintiff breached a condition precedent to coverage when he failed to provide notice of his alleged disability to Provident for eight years. Accordingly, Provident is entitled to summary judgment as to Count One of the Complaint.

## II.  Plaintiff's Claim is Time-Barred Because He Filed Suit More Than Five Years After the (Latest Possible) Expiration of the Contractual Limitations Period in the Policy.

Provident is also entitled to summary judgment as to Count One because Plaintiff did not file suit until more than five years after the (latest possible) expiration of the stipulated contractual limitations period in the Policy. Once again, there is no genuine issue of material fact on this issue. The Policy language requiring suit to be filed within three years and three months (and not later than four years) after the onset of the alleged disability is not in dispute. *See* Policy (Exh. 1 to Def.'s Mot.) at PLASP00013-14. Plaintiff maintains that his allegedly disabling condition began no later than December 1997, the date on which he reduced his hours in the ER and from which he claims disability benefits. *See, e.g.,* Pl.'s Opp'n at 33 ("Dr. Doe contends that he became disabled in 1997 . . . ."). In addition, the Court can take judicial notice of the fact that Plaintiff did not file suit until April 4, 2007, more than five years after the latest possible expiration of the contractual limitations period in December 2001.

Defendant's Motion cites numerous cases holding similar contractual limitations periods fully enforceable under Virginia insurance law. *See* Def.'s Mot. at 27. Plaintiff fails to cite a single case to refute this well-established point of Virginia law. *See* Pl.'s Opp'n at 29-31. Thus, once again, the overwhelming weight of controlling legal authority demonstrates that Provident is entitled to summary judgment on this basis.

Plaintiff asks the Court to spare his case from summary judgment because the jury could reject his contention that he has been disabled since 1997. *See* Pl.'s Opp'n at 30. But Plaintiff

cannot have his proverbial cake and eat it too. Since he admittedly claims to have been disabled since 1997, and seeks disability benefits from that date forward, the four-year (at the latest) contractual limitations period in the Policy began to run at that time and expired in December 2001. It follows that Plaintiff's suit is untimely by more than five years, and that Provident is entitled to summary judgment on this basis.

If it were otherwise, and the Court accepted Plaintiff's argument that the limitations period has not run because Plaintiff has a "continuing loss," *see* Pl.'s Opp'n at 30, then Plaintiff could wait 50 years to file suit without prejudice, which would have the effect of defeating the purpose of the contractual limitations period and effectively striking it from the Policy. Such a result would be contrary to longstanding principles of contract construction in Virginia. *See, e.g., City of Chesapeake v. States Self-Insurers Risk retention Group, Inc.*, 271 Va. 574, 628 S.E.2d 539 (2006). ("When the terms in a contract are clear and unambiguous, the contract is construed according to its plain meaning. 'Words that the parties used are normally given their usual, ordinary, and popular meaning. No word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly.'")

### III.    Plaintiff is <u>Not</u> "Disabled" from His "Occupation" Under the Terms of the Policy.

####     A.    *Plaintiff Does <u>Not</u> Have a "Disability" as Defined in the Policy.*

Provident is also entitled to summary judgment as to Count One because the undisputed facts demonstrate that Plaintiff is not "disabled" from his "occupation" under the terms of the Policy. There is no dispute that for Plaintiff to have a "disability" from his "occupation" under the terms of the Policy, he was required to be "under the care an attendance of a Physician." *See* Policy (attached as Exh. 1 to Def.'s Mot. for Summ. J.) at PLASP00005, 00008. Put simply,

Provident is entitled to summary judgment because Plaintiff admits that he never sought or obtained treatment for his allegedly disabling condition -- PTSD -- and was never told by any treating health care provider that he needed to cut back or quit his work as an ER doctor, so as to satisfy the definition of "disability" under the Policy.  *See* Dep. of Pl. (Exh. 2 to Def.'s Mot.) at 51-52, 110.

Plaintiff attempts to salvage his claim from summary judgment by arguing that the Policy does not require him to be under the care and attendance of a physician *for his allegedly disabling condition*.  *See* Pl.'s Opp'n at 32-33.  This argument cannot be taken seriously, however, as it would permit any plaintiff to quit his job for a self-diagnosed, allegedly disabling psychiatric condition (e.g., agoraphobia) and still collect disability benefits, so long as he was seeing some health care provider for some other, non-disabling, condition (e.g., high blood pressure).  If disability policies were given such an absurd construction, then there would inevitably be precious few insureds who would remain in the work force.  Thus, Plaintiff's argument reflects neither sound public policy nor a reasonable interpretation of the Policy language at issue.

Plaintiff also argues that he satisfies the "care and attendance of a Physician" requirement in the Policy because he saw several treating psychotherapists from 1997 to 2007 and "they all asserted [Plaintiff] was disabled from working in the ER."  Pl.'s Opp'n at 32-33.  Plaintiff's assertion is plainly incorrect.  As explained in Defendant's Motion, *not one* of the three psychotherapists Plaintiff saw from the claimed onset of his allegedly disabling condition in December 1997 through the time of his alleged total disability in April 2004 (Constantine Kyropoulos, Jonathan Schwartz and Kevin Spera) either diagnosed or treated Plaintiff for his allegedly disabling condition (PTSD), or indicated that Plaintiff was disabled from working as an

ER doctor.  *See* Def.'s Mot. at 11-13 (summarizing Plaintiff's treatment with these providers). Indeed, the psychotherapist Plaintiff saw weekly for the two years preceding the filing of his disability claim has offered testimony that:

> [Plaintiff] definitely did not have post-traumatic stress disorder or any other disorder or condition which prevented him from continuing his practice as an emergency room physician at any time during my treatment of him from January 2003 through December 2004.  I have never recommended that [Plaintiff] stop working as an emergency room physician, and in my professional opinion, to a reasonable degree of medical certainty, he was fully capable of working as an emergency room physician throughout my treatment of him.

Decl. of Kevin Spera at ¶ 4 (to be filed under seal as Exhibit 15).

Furthermore, the record demonstrates that Plaintiff treated with these psychotherapists intermittently from 1977 through 2004 for depression, anxiety, stress and adjustment disorders relating principally to his romantic relationships.  *See* Def.'s Mot. At 11-13.  Yet, Plaintiff admits that his treatment for these (non-PTSD) disorders did not interfere with his ability to work full-time as an ER doctor for twenty-five years prior to 1997.  *See* Pl.'s Dep. at 124-26.  Thus, Plaintiff did not receive treatment for his allegedly disabling condition from Dr. Kyropoulos, Mr. Schwartz and Mr. Spera so as to satisfy the definition of "disability" under the Policy.

Although Plaintiff identifies a psychologist named Thomas Gilmore as his attending physician in his Claim Form, *see* Claim Form (Exh. 4 to Def.'s Mot.) at PLACL00072, his treatment with Dr. Gilmore also does not satisfy the definition of "disability" under the Policy. To be sure, Dr. Gilmore testified that PTSD was not the focus of Plaintiff's treatment, that he cannot say to a reasonable degree of medical certainty what Plaintiff's psychological condition was in 1997, 2004 or any other time prior to when he first saw Plaintiff on August 29, 2005, and that he does not have a professional opinion to a reasonable degree of medical certainty as to

whether Plaintiff is disabled from working as an ER doctor.  *See* Dep. of Thomas Gilmore (to be filed under seal as **Exhibit 16**.)

For all of these reasons, Plaintiff's assertion that all of his treating psychotherapists concluded that he was disabled from working in the ER is plainly incorrect.  In addition, because none of these psychotherapists treated Plaintiff for PTSD, their care and treatment does not satisfy the Policy definition of "disability," which necessarily requires medical treatment for the allegedly disabling condition.  It follows that Provident is entitled to summary judgment as to Count One of the Complaint on this basis.

B.       *Plaintiff is <u>Not</u> Disabled from his "Occupation" Under the Terms of the Policy.*

The undisputed facts also make it clear that Plaintiff's "occupation" at the time of his "disability" was not ER doctor.  There is no dispute that Plaintiff's "occupation" as defined in the Policy is that in which he was "regularly engaged" at the time of his alleged "disability," which necessarily entails treatment by a doctor for his allegedly disabling condition, as explained above.  *See* Policy (attached as Exh. 1 to Def.'s Mot.) at PLASP00005.  By Plaintiff's own admission, he first saw an attending physician for his alleged "disability" on August 29, 2005. *See* Dep. of Pl. (Exh. 2 to Def.'s Mot.) at 103, 110; Claim Form (Exh. 4 to Def.'s Mot.) at PLACL00072.  Thus, August 29, 2005 is the earliest possible date on which Plaintiff could even arguably be considered "disabled" under the Policy.  Plaintiff also admits that by that date, he had been "regularly engaged" as an internist – not an ER doctor – since 2004, and that he has never been disabled from working as an internist.  *See* Dep. of Pl. (Exh. 2 to Def.'s Mot.) at 43-46, 48, 111-12.  It follows that Plaintiff has never been "disabled" from his "occupation" under the terms of the Policy, and that Provident is entitled to summary judgment as to Count One.

**IV.     Plaintiff Breached a Condition Precedent to Coverage When He Failed to Provide the Required Proof of Loss Despite Repeated Requests from Provident.**

Provident is also entitled to summary judgment as to Count One because the undisputed facts demonstrate that Plaintiff breached the condition precedent to coverage to provide the required proof of his alleged loss and to cooperate with Provident in evaluating his claim. Once again, there are no genuine issues of material fact with respect to this issue. Plaintiff does not dispute that the Policy requires that "written proof [of loss] must be given within 90 days after a loss . . . [and] no later than one year from the time specified unless you were legally incapacitated," or that Provident's claim form expressly instructed him to "attach copies of medical records and test results." *See* Policy (Exh. 1 to Def.'s Mot.) at PLASP00013 and Claim Form (Exh. 4 to Def.'s Mot.) at PLACL00073. Nor does Plaintiff dispute that Provident made at least six documented requests to collect the medical records from two of the three treating health care providers Plaintiff identified on his Claim Form (Thomas Gilmore and Kevin Spera), or that Provident did not close Plaintiff's claim until he failed to respond to these repeated requests. *See* Claim File (Exh. 5 to Def.'s Mot.) at PLACL-00147-48, -00153-54, -00159-61, -00163 and -00171-72.

Defendant's Motion cites at least eighteen cases where insurance claims have been barred because of an insured's failure to provide the required proof of loss or to otherwise cooperate, including at least twelve cases where the insurer was awarded summary judgment. *See* Def.'s Mot. at 31-33. Once again, Plaintiff utterly fails to refute this line of authority. He cites no legal authority other than that provided by Provident, and he fails to identify a single case where a disability claim has been allowed despite the insured's refusal to produce medical records from the majority of treating doctors he identified as supporting his claim. *See* Pl.'s Opp'n at 34-36. On this record, it is abundantly clear that Plaintiff has failed to carry his burden of demonstrating compliance with conditions precedent to coverage regarding his duties to provide proof of his

14

alleged loss and to cooperate.  Accordingly, Provident is entitled to summary judgment as to Count One.

Plaintiff simply misstates Virginia law when he argues that summary judgment is not appropriate on this basis because "nothing in the existing case law suggests that an insured is required to 'prove' his loss."  Pl.'s Opp'n at 35.  As noted in Defendant's Motion:  "It has long been settled in [Virginia] that if an insurance policy makes the furnishing of a proof of loss a condition precedent to an action upon it, performance or waiver of it must be shown before a recovery can be had."  *Aetna Cas. & Sur. Co. v. Harris*, 218 Va. 571, 578, 239 S.E.2d 84, 88 (1977) (citing *Home Ins. Co. v. Cohen*, 61 Va. 449 (20 Gratt.), 312, 316-17 (1871)).  The use of mandatory language with respect to an insured's duties under a policy, such as "must" and "shall," is indicative of a condition precedent.  *See Allstate Ins. Co. v. Charity*, 255 Va. 55, 58, 496 S.E.2d 430, 431 (1998) (finding policy language that insured "must" provide a proof of loss to be a condition precedent); *Harris*, 218 Va. at 578, 239 S.E.2d at 88 (finding policy language that the insured "shall" provide proof of losses to be a condition precedent).  As noted above, the Policy in this case includes such mandatory language.  *See* Policy (Exh. 1 to Def.'s Mot.) at PLASP00013 ("written proof [of loss] *must* be given within 90 days after [a] loss . . .") (emphasis added).  Therefore, the proof of loss provision in the Policy is a condition precedent to coverage in this case, and Plaintiff bears the burden of proving either compliance with that condition or waiver of it.

Plaintiff cannot carry his burden of proving compliance with this condition precedent, so he attempts to shift that burden to Provident by arguing that he provided a release for the medical records at issue to Provident.  *See* Pl.'s Opp'n at 35.  This argument ultimately fails, however, because the undisputed facts set forth in Defendant's Motion demonstrate that Plaintiff refused to

produce the medical records at issue despite Provident's more than diligent efforts to obtain them

even with Plaintiff's signed release -- including three letters and a voice mail to Plaintiff himself

(dated March 22, 2006, April 12, 2006, May 16, 2006, and June 8, 2006), a documented voice

mail to Dr. Gilmore (dated April 17, 2006), and a documented voice mail to Plaintiff's insurance

agent (dated May 22, 2006). *See* Claim File (Exh. 5 to Def.'s Mot.) at PLACL-00147-48, -

00153-54, -00159-61, -00163 and -00171-72.  More importantly, the relevant Policy language

expressly provides that Plaintiff will not be excused from providing the required proof of loss

"unless you were legally incapacitated."  *See* Policy (Exh. 1 to Def.'s Mot.) at PLASP00013.

Even Plaintiff does not contend that he has ever been legally incapacitated so as to satisfy this

language.

        Plaintiff also attempts to excuse his failure to provide the required medical records to

Provident by arguing that they could not have been material, since Provident "had [already]

denied the claim based upon Mr. Spera's narrative and Dr. Gilmore's summaries."  Pl.'s Opp'n

at 35-36.  As noted above, this argument is not only factually inaccurate, but it is also a red

herring.  As Diane Freeman testified, Provident never made a final decision to either accept or

deny Plaintiff's claim; rather, it made a preliminary decision based upon the limited information

available in the file, and requested additional information in the form of the underlying medical

records from Dr. Gilmore and Mr. Spera.  *See* Def.'s Mot. at 17-18; Claim File (Exh. 5 to Def.'s

Mot.) at PLACL00147-48; Dep. of Diane Freeman (Exh. 12 to Def.'s Mot.) at 80-83.

Ultimately, Provident was precluded from completing its evaluation of Plaintiff's claim by

Plaintiff's refusal to comply with Provident's repeated requests for these underlying medical

records, and accordingly, Provident closed Plaintiff's file.  *See* Def.'s Mot. at 17-20; Dep. of

Diane Freeman at 97, 109, 113-14 (to be filed under seal as **Exhibit 17**.).  Thus, this argument

16

also does not excuse Plaintiff from producing the required medical records from the majority of treating physicians he identified as supporting his claim.

Plaintiff cannot carry his burden of proving compliance with the condition precedent to coverage of providing the required proofs of loss. Therefore, Plaintiff's claim is barred, and Provident is entitled to summary judgment as to Count One of the Complaint.

## V.    Provident Has <u>Not</u> Waived Its Policy Defenses.

In his Opposition, Plaintiff argues that "having treated [Plaintiff's] claim as sufficient under the Policy and determining its claim on the merits, Provident has waived its claims of breach." Pl.'s Opp'n at 36. Once again, however, Plaintiff's argument is factually inaccurate and legally insufficient.

Plaintiff's waiver argument is factually inaccurate because, as explained above, Provident neither treated Plaintiff's claim as sufficient nor had the opportunity to complete its evaluation so as to make a final determination on the merits. *See supra* at 16. In addition, the undisputed record of Provident's evaluation of Plaintiff's claim simply belies any such waiver. Provident's claims correspondence with Plaintiff were more than sufficient to put Plaintiff on notice of the factual issues giving rise to the Policy defenses (i.e., the unusual delay between the onset of the alleged disability and the filing of the claim, the definitions of "disability" and "occupation" under the Policy, the requirement that Plaintiff provide underlying medical records from his treating physicians as part of his proof of loss). *See, e.g.,* Claim File (Exh. 5 to Def.'s Mot.) at PLACL-00110, -00147-48, -00153-54, -00156, -00159-61, -00163, -00171-72.[4]

Plaintiff's waiver argument is also legally insufficient. Perhaps the best evidence of this is the fact that Plaintiff cites no Virginia authority whatsoever, and instead relies upon a 90 year

---

[4] Since Plaintiff had not filed suit at the time the claim was evaluated, the contractual limitations period was not in issue.

old case from Connecticut and a 130 year-old case from Wisconsin. *See* Pl.'s Opp'n at 36-37

(citing *Lee v. Casualty Co. of America*, 96 A. 952, 954 (Conn. 1916) and *Cannon v. Home Ins.*

*Co. of New York*, 11 N.W. 11, 14 (Wis. 1881)). In addition to being outdated and non-binding,

these cases are distinguishable from the case at bar, because in both of them, the insurer

undertook some affirmative act after knowledge of the insured's noncompliance with the policy

which demonstrated an unequivocal acceptance of responsibility for the claim. *See Lee*, 96 A. at

954 (insurer attempted for two months to settle a third party claim against its insured after

knowledge of the insured's breach of the policy); *Cannon*, 11 N.W. at 14 (insurer knowingly

evaluated a claim on a forfeited policy, "recognizing by this act the continued validity of the

policy.") Plaintiff has not identified any portion of the record indicating how or when Provident

knowingly waived any of its defenses, as required to find a waiver under Virginia law. *See, e.g.,*

*Stuarts Draft Shopping Ctr., L.P. v. SA-D Assocs.*, 251 Va. 483, 489-90, 468 S.E.2d 885, 889-90

(1996) ("[A] party claiming waiver has the burden of showing the two essential elements of

waiver, namely 'knowledge of the facts basic to the exercise of the right [waived] and the intent

to relinquish that right.' These elements must be shown by 'clear, precise and unequivocal

evidence.'").

  Neither of the cases Plaintiff relies upon for its waiver argument controls the issues of

Virginia insurance law presented by Defendant's Motion; indeed, as explained above, these cases

fly in the face of the longstanding and clear line of authority illustrated in the dozens of Virginia

cases cited by Provident. *See* Def.'s Mot. at 22-35. In short, the scant, outdated, and non-

binding authority cited by Plaintiff has no bearing on the issues before the Court, and certainly

does not overcome the overwhelming weight of controlling precedent cited by Provident, all of

which demonstrates that Provident is entitled to summary judgment with respect to Count One of the Complaint.

**VI.     Plaintiff's Bad Faith Claim Fails as a Matter of Law**

Provident relies upon its earlier filings setting forth the reasons it is entitled to summary judgment as to Count Two of the Complaint, and respectfully requests oral argument pursuant to Federal Rule 56 on the legal and factual issues raised therein.  *See* Def.'s May 24, 2007 Br. in Supp. of Partial Mot. to Dismiss at 5-7; Def.'s June 29, 2007 Reply Br. in Supp. of Partial Mot. to Dismiss at 2-6; Def.'s Mot. at 35-36.

<u>**CONCLUSION**</u>

For the reasons stated above, Provident respectfully requests that the Court enter an Order:  1) granting Provident's Motion for Summary Judgment and dismissing all counts of the Complaint with prejudice; and 2) awarding Provident such other relief as the Court deems proper.  In the alternative, Provident respectfully requests that the Court enter an Order: 1) granting Provident Partial Summary Judgment and dismissing Count Two of the Complaint with prejudice; and 2) awarding Provident such other relief as the Court deems proper.

Respectfully submitted,

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY


/s/ Tameka M. Collier
Tameka M. Collier, D.C. Bar No. 488979
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2134
(202) 274-2950
FAX (202) 274-2994
tameka.collier@troutmansanders.com

/s/ Stephen D. Otero
David E. Constine, III, VSB No. 23223
Stephen D. Otero, VSB No. 38752
A. Tevis Marshall, VSB No. 68401
TROUTMAN SANDERS LLP
1001 Haxall Point
P. O. Box 1122
Richmond, Virginia  23218-1122
(804) 697-1200
FAX (804) 697-1339
steve.otero@troutmansanders.com

Counsel to Defendant

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June, 2008, I caused the foregoing Defendant's

Reply Brief in Support of Motion for Summary Judgment to be filed served electronically on the

following:

J. Michael Hannon, Esq.
Sarah R. Bagley, Esq.
Hannon Law Group
1901 18th Street, N.W.
Washington, DC  20009

Counsel for Plaintiff

/s/ Tameka M. Collier

1735054v2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| JOHN DOE, M.D. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:07cv00633 |
| | ) | (HHK) (AK) |
| PROVIDENT LIFE & ACCIDENT INSURANCE | ) | |
| COMPANY | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY TO
PLAINTIFF'S STATEMENT OF MATERIAL FACTS**

Now comes Defendant, Provident Life & Accident Insurance Company ("Provident"), by counsel, and states as follows for its Reply to Plaintiff's May 12, 2008 Statement of Material Facts ("Plaintiff's Statement"):

Plaintiff's Statement responds only to the headings in the Statement of Undisputed Facts contained in Defendant's Motion for Summary Judgment and Supporting Memorandum ("Defendant's Motion"), and not to the specific factual statements and record citations listed below each heading. (*See* Pl.'s May 12, 2008 Statement of Material Facts.) Thus, pursuant to the Local Civil Rules, in determining the Defendant's Motion, the Court can – and should – "assume the facts identified by the moving party in its statement of material facts are admitted . . . ." *See* Local Civil Rule 7(h).

Even if the Court does not assume the facts set forth in Defendant's Motion are admitted, it is apparent from Plaintiff's Statement that there is no genuine dispute about the factual predicate for Defendant's Motion:

1.      Plaintiff admits the facts contained in this section of Defendant's Motion, and admits that Virginia insurance law governs Count One of the Complaint.  *See* Def.'s Mot. at 6; Pl.'s Statement at 1; Pl.'s Opp'n at 25-36.

2.      Plaintiff admits the facts contained in this section of Defendant's Motion, including the relevant Policy language.  *See* Def.'s Mot. at 6-7; Pl.'s Statement at 1; Pl.'s Opp'n at 25, 29, 31-32, and 34.

3.      Although Plaintiff purportedly disputes the fact that he voluntarily decided to cut back his hours in the ER in 1997, he is bound by his sworn testimony that reducing his hours in the ER to part-time was his own decision, and that no health care provider told him that he needed to reduce his hours in the ER before he decided to do so.  *See* Pl.'s Dep. (Exh. 2 to Def.'s Mot.) at 51-54; *see also* Pl.'s Opp'n at 5-6 ("Following *his decision to cut back on his ER work* . . . .") (emphasis added); *see also* Def.'s Mot. at 7-9; Pl.'s Statement at 1.

4.      Although Plaintiff purportedly disputes the fact that he voluntarily decided to stop taking shifts in the ER in 2004, he is bound by his sworn testimony that reducing his hours in the ER was his own decision, and that no health care provider told him that he needed to stop working in the ER before he decided to do so.  *See* Pl.'s Dep. (Exh. 2 to Def.'s Mot.) at 51-54; *see also* Def.'s Mot. at 9-11; Pl.'s Statement at 1.

5.      Plaintiff's purported dispute with this section of Defendant's Motion is not with the factual predicate contained therein, but rather with the meaning of the admitted Policy language, a legal question of the sort regularly resolved by courts in summary judgment motions. *See* Def.'s Mot. at 11-13; Pl.'s Statement at 1-2.  Regardless, Plaintiff also contends that the purportedly disputed facts are not material to the issues presented by Defendant's Motion.  *See* Pl.'s Statement at 1.

6.    Plaintiff does not dispute the facts contained in this section of Defendant's Motion.  *See* Pl.'s Statement at 2.

7.    Once again, Plaintiff's purported dispute with this section of Defendant's Motion is not with the factual predicate contained therein, but rather with the meaning of the admitted Policy language, a legal question of the sort regularly resolved by courts in summary judgment motions.  *See* Def.'s Mot. at 13-20; Pl.'s Statement at 2.

Respectfully submitted,

PROVIDENT LIFE & ACCIDENT
INSURANCE COMPANY

/s/ Tameka M. Collier
Tameka M. Collier, D.C. Bar No. 488979
TROUTMAN SANDERS LLP
401 9th Street, N.W., Suite 1000
Washington, D.C. 20004-2134
(202) 274-2950
FAX **(**202) 274-2994
tameka.collier@troutmansanders.com

/s/ Stephen D. Otero
David E. Constine, III, VSB No. 23223
Stephen D. Otero, VSB No. 38752
A. Tevis Marshall, VSB No. 68401
TROUTMAN SANDERS LLP
1001 Haxall Point
P. O. Box 1122
Richmond, Virginia  23218-1122
(804) 697-1200
FAX (804) 697-1339
steve.otero@troutmansanders.com

Counsel to Defendant

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 3rd day of June, 2008, I caused the foregoing Defendant's

Reply to Plaintiff's Statement of Material Facts to be filed served electronically on the following:

J. Michael Hannon, Esq.
Sarah R. Bagley, Esq.
Hannon Law Group
1901 18th Street, N.W.
Washington, DC  20009

Counsel for Plaintiff


<u>/s/ Tameka M. Collier</u>

1735819